Approved: _____   **22 MAG 3836**
NICHOLAS W. CHIUCHIOLO
Assistant United States Attorney

Before:   HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

------------------------------------x
                                    :   SEALED
UNITED STATES OF AMERICA            :   COMPLAINT
                                    :
       - v. -                       :   Violation of 21 U.S.C.
                                    :   § 846
DANIEL MINUCCI,                     :
                                    :   COUNTY OF OFFENSE:
              Defendant.            :   NEW YORK
                                    :
------------------------------------x

STATE OF NEW YORK          ) ss:
SOUTHERN DISTRICT OF NEW YORK  )

JOHN FAHIM, being duly sworn, deposes and says that he is a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1.   From in or about January 2022, up to and including in or about April 2022, in the Southern District of New York and elsewhere, DANIEL MINUCCI, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.   It was a part and an object of the conspiracy that DANIEL MINUCCI, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.   The controlled substance that DANIEL MINUCCI, the defendant, conspired to distribute and possess with intent to distribute was 50 grams and more of methamphetamine, its salts,

1

isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Task Force Officer with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5. Based on my participation in this investigation, including my review of reports and my conversations with other law enforcement officers and a cooperating witness ("CW-1")[1] working with law enforcement, I am aware of the following, in substance and in part:

    a. Beginning in or around December 2021, CW-1 began communicating with DANIEL MINUCCI, the defendant, (whom CW-1 knew previously to be a methamphetamine distributor) about possible narcotics transactions.

    b. On or about January 11, 2022, CW-1 and MINUCCI spoke by telephone. The call was recorded. During the call, CW-1 asked MINUCCI for the price that MINUCCI would sell a "quarter" pound of "dry," which, based on my conversations with

---

[1] CW-1 previously pled guilty, pursuant to a cooperation agreement, in this District to a narcotics offense. CW-1 has agreed to cooperate with the Government's investigation in the hopes of receiving leniency at sentencing. Information provided by CW-1 has been corroborated, and law enforcement agents have deemed the information provided by CW-1 to be credible. In or about June 2019, CW-1 submitted urinalysis to pretrial services that tested positive for methamphetamine, which was a violation of the terms of CW-1's conditions of release.

CW-1 and the context of the conversation, I understood to mean a quarter pound of methamphetamine.

   c. On or about January 20, 2022, CW-1, acting at the direction of law enforcement, purchased approximately three ounces of crystalized methamphetamine from MINUCCI. At approximately 6:00 p.m. on January 20, 2022, CW-1 had a telephone call with MINUCCI in which CW-1 and MINUCCI discussed, in substance and in part, MINUCCI's sale of methamphetamine to CW-1. I was present with CW-1 for this telephone call. During this call, MINUCCI stated, in substance and in part, that the sale would take place at a residential apartment (the "MINUCCI Apartment") in New York, New York.

   d. Based on my participation in this investigation, including my conversations with CW-1 and my review of a recording made by CW-1 of a meeting with MINUCCI on or about January 20, 2022, I am aware that, shortly after the aforementioned telephone call, CW-1 met with MINUCCI at the MINUCCI Apartment. During this meeting CW-1 observed MINUCCI measure out, weigh, and package a quantity of a substance that was consistent with crystalized methamphetamine. MINUCCI provided the apparent narcotics to CW-1 and, in exchange, CW-1 furnished $750 provided by law enforcement. Subsequent testing by a DEA lab revealed that the substance MINUCCI sold to CW-1 consisted of approximately 86 grams of Methamphetamine Hydrochloride having an approximate substance purity of 95%.

   e. On or about February 8, 2022, CW-1, acting at the direction of law enforcement, purchased a quantity of crystalized methamphetamine from MINUCCI. At approximately 6:00 p.m. on February 8, 2022, CW-1 had a telephone call with MINUCCI in which CW-1 and MINUCCI discussed, in substance and in part, MINUCCI's sale of methamphetamine to CW-1. Based on my participation in this investigation, including my conversations with CW-1 and my review of a recording made by CW-1 of a meeting with MINUCCI on or about February 8, 2022, I am aware that, shortly after the aforementioned telephone call, CW-1 met with MINUCCI at the MINUCCI Apartment. During this meeting, MINUCCI furnished two plastic bags of apparent narcotics in exchange for $250, which law enforcement had previously provided to CW-1. Subsequent testing by a DEA lab revealed that the substance MINUCCI sold to CW-1 consisted of approximately 57 grams of Methamphetamine Hydrochloride having an approximate substance purity of 95%.

f. On or about March 14, 2022, CW-1, acting at the direction of law enforcement, purchased a quantity of crystalized methamphetamine from MINUCCI. At approximately 6:30 p.m. on March 14, 2022, CW-1 had a telephone call with MINUCCI in which CW-1 and MINUCCI discussed, in substance and in part, MINUCCI's sale of methamphetamine to CW-1. Based on my participation in this investigation, including my conversations with CW-1 and my review of a recording made by CW-1 of a meeting with MINUCCI on or about March 14, 2021, I am aware that shortly after the aforementioned telephone call, CW-1 met with MINUCCI at the MINUCCI Apartment and MINUCCI furnished two plastic bags of apparent narcotics in exchange for $640, which law enforcement had previously provided to CW-1. The apparent narcotics obtained from MINUCCI on March 14, 2022, weighing approximately 94 grams, have been submitted to the DEA lab for testing.

g. On or about March 22, 2022, CW-1 and MINUCCI spoke by telephone. This telephone call was recorded. During the call, MINUCCI stated, in substance and in part, that MINUCCI was traveling to Arizona the week of March 27 to purchase methamphetamine from a supplier and that MINUCCI could purchase methamphetamine from the supplier on CW-1's behalf. In subsequent telephone calls between MINUCCI and CW-1, MINUCCI stated, in substance and in part, that MINUCCI's trip to Arizona had been delayed.

h. On or about April 26, 2022, CW-1 communicated with MINUCCI through text message. MINUCCI stated that his trip to Arizona "got delayed" because "[h]e [the supplier] didn't move fast enough and I had to reup or lose business." Based on my training and experience, and my conversations with CW-1, I understood MINUCCI to be conveying that he recently obtained a distribution-quantity supply ("I had to reup") of methamphetamine. In response, CW-1 asked to "come by" to "grab something little please," which was a reference CW-1 visiting the MINUCCI Apartment to purchase methamphetamine from MINUCCI. In response, MINUCCI agreed.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of DANIEL MINUCCI, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
JOHN FAHIM
Task Force Officer
Homeland Security Investigations


Sworn to me through the transmission
of this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 28th day of April, 2022

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK